**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN SINCLAIR,<br><br>                Plaintiff,<br><br>v.<br><br>CITICARDS CBNA,<br><br>                Defendant. | Civil Action No. 25-14256 (JXN)(SDA)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendant Citibank, N.A.'s[1] ("Citibank") motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. (ECF No. 7.) *Pro se* Plaintiff John Sinclair ("Plaintiff") opposed (ECF No. 18), and Citibank replied (ECF No. 19). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[2] 78 and Local Civil Rule 78.1. For the reasons set forth below, Citibank's motion to compel arbitration is **GRANTED**.

## I.      BACKGROUND

### A.    Statement of Facts

Plaintiff applied for a credit card with Citibank on October 21, 2016. (*See* Def.'s Ex. 1 at *6,[3] ECF No. 7-2.). Citibank internally approved his application the next day. (*Id*. at *5.) Three days later, Citibank mailed Plaintiff notice of his approval, a credit card, and a card member

---

[1] Plaintiff improperly sued Defendant as "Citicards CBNA" in the original Complaint. (Def. Notice of Removal, ECF No. 1.) The Court takes notice of the mistaken error and reflects the name of Defendant reflected in the record. (Def. Notice of Motion to Compel Arbitration & Stay Proceedings, ECF No. 7.)

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[3] Pincites preceded by an asterisk (*) use ECF pagination.

agreement ("Card Agreement").[4] (*See* Def.'s Ex. 2, ECF No. 7-3.) The Card Agreement set forth

the terms and conditions for Plaintiff's Citibank credit card account. (*See* Def.'s Ex. 3 ("Card

Agreement"), ECF No. 7-2.)

The first page of the Card Agreement summarized important provisions and advised, in

bold type, "we encourage you to read your entire Card Agreement, including the arbitration

provision, before you use your Account." (*Id.* at 1.) The first page also explained the Card

Agreement's Arbitration Provision meant Plaintiff "cannot go to court, have a jury trial or initiate

or participate in a class action if you have a dispute with [Citibank]. Instead, . . . the dispute must

be resolved by a professional arbitrator, not a judge or jury." (*See id.*)

The Arbitration Provision began as follows:

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

(*Id.* at 9.) The Arbitration Provision then continued:

**Covered claims**

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
- If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party

---

[4] There is no evidence that the notice of approval was returned as undeliverable. (*See* Booth Decl. ¶ 9, ECF No. 7-2.)

claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/ subsidiary company.

(*Id.*) Next, the Arbitration Provision stated:

Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

(*Id.*) However, the Card Agreement gave Plaintiff the option of rejecting the Arbitration Provision

"by sending a written rejection notice to us . . . . within 45 days of Account opening." (*Id.* at 10.)

Finally, the Card Agreement stated:

This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement.

(*Id*. at 5.) According to Citibank's records, Plaintiff never sent a written rejection notice to Citibank. (Booth Decl. ¶ 11.) Plaintiff began using his Citibank credit card almost as soon as he received it. (*See* Def.'s Ex. 4 ("Account Statement"), ECF No. 7-2.)

Plaintiff alleges that Citibank "charged off" his account after it "became delinquent" in April 2024. (*See* Compl. ¶ 5, ECF No. 1-1.) Plaintiff further claims that, in May 2025, Citibank reported to credit agencies that Plaintiff's account had a past due balance of $5,897. (*Id.* ¶ 6.)

B.      Procedural History

On June 26, 2025, Plaintiff filed this lawsuit against Citibank in New Jersey Superior Court. (*See* Notice of Removal ¶ 1, ECF No. 1.) Plaintiff alleges that Citibank continued to report Plaintiff's debt to credit agencies after the "charge-off," illegally "re-aged" Plaintiff's debt to

3

report it beyond the statutory reporting period, and reported misleading information about Plaintiff's account. (*See* Compl. ¶ 6.) The Complaint includes claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681n–1681o; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–1692f; and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2. (*See generally id.*)

Citibank timely removed this case on August 7, 2025 (*see* Notice of Removal), and on October 20, 2025, moved to compel arbitration. (Mot. to Compel, ECF No. 7). Plaintiff opposed (Pl.'s Opp'n, ECF No. 18), and Citibank replied. (Def.'s Reply, ECF No. 19).

## II.    LEGAL STANDARD

The FAA reflects a "strong federal policy in favor of" arbitration. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). But the FAA does not require the Court to automatically grant a motion to compel arbitration. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Rather, the Court first "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* When it is apparent from "the face of a complaint, and documents relied upon in the complaint, that . . . a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (alteration in original) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).

4

III.    **DISCUSSION**

A.      **There is a Valid Agreement to Arbitrate**

i.      ***The Court Applies South Dakota Law***

The Court uses "ordinary state-law principles that govern the formation of contracts" to determine whether there is a valid arbitration agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, at the threshold, the Court must determine which state's contract principle applies to the Card Agreement.

The Card Agreement states that "the law of South Dakota govern[s] the terms and enforcement of this Agreement." (Card Agreement at 10.) As Plaintiff brought this case in New Jersey federal court, the Court applies New Jersey's choice-of-law rules to the Card Agreement's choice-of-law provision. *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (applying forum state law to evaluate choice-of-law provision in arbitration agreement); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (applying forum state choice-of-law rules in diversity cases).

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992). Therefore, New Jersey courts will apply the law of the state chosen by the parties, unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 342 (quoting *Restatement (Second) of Conflicts of Laws* § 187 (1969)).

Neither exception applies. First, because Citibank principally does business in South Dakota (*see* Compl. ¶ 2), South Dakota has a substantial relationship to the parties. *Instructional Sys.*, 130 N.J. at 342 (finding a corporation's California headquarters established a substantial relationship to California); *see also Restatement (Second) of Conflict of Laws* § 187, cmt. f (stating that a "substantial relationship" is present where one of the parties' principal place of business is the "state of the chosen law."). Next, it is not clear how New Jersey has a "materially greater interest" in the application of its own contract law to this arbitration provision, nor how applying South Dakota law would offend New Jersey public policy.

Accordingly, the Court applies South Dakota law to determine whether there is a valid arbitration agreement.

### ii. The Arbitration Provision is Valid Under South Dakota Law

South Dakota "favor[s] the resolution of disputes by arbitration." *Thunderstik Lodge, Inc. v. Reuer*, 1998 S.D. 110, ¶ 14. Indeed, under South Dakota law,

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

S.D. Codified Laws § 21-25A-1. "If any party to an agreement providing for arbitration had any doubt whether the case should be resolved by traditional judicial means or by arbitration, arbitration will control." *Thunderstik*, 1998 S.D. at ¶ 15.

However, arbitration is "a matter of consent, not coercion." *Masteller v. Champion Home Builders, Co.*, 2006 S.D. 90, ¶ 11 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Therefore, the law requires that there be a valid agreement to arbitrate before parties will be compelled to arbitrate a dispute." *Id.*

South Dakota contracts have four essential elements: "(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." S.D. Codified Laws § 53-1-2. Plaintiff does not dispute any of these elements. Both he and Citibank were capable of contracting. The contract had a lawful object—opening a credit card account. A promise to arbitrate is consideration. *Vivos xPoint Inv. Grp., LLC v. Sindorf*, 2026 S.D. 25 ¶ 22 n.5.

Plaintiff, moreover, consented to the Arbitration Provision when he started using his Citibank card. Accepting the "benefit of a transaction is equivalent to a consent to all the obligations arising from it." S.D. Codified Laws § 53-3-5. And generally, "one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." *Thunderstik*, 1998 S.D. at ¶ 17 (quoting *Flynn v. Lockhart*, 526 N.W.2d 743, 746 (S.D. 1995)). Here, Plaintiff received the Card Agreement and began using his card almost immediately. He accepted the benefit of the transaction and, therefore, consented to the Card Agreement's obligations, including arbitration.

### iii.    *Citibank did not Waive the Arbitration Provision*

Plaintiff argues Citibank waived the Arbitration Provision because it litigated a different contractual claim in New Jersey state court without moving to compel arbitration. (Pl.'s Opp'n at 4–5, ECF No. 18.) Specifically, Plaintiff alludes to a 2021 action Citibank filed against Plaintiff in New Jersey Superior Court, Monmouth County ("Monmouth Action"). (*Id.* at 5.) Though Plaintiff claims the parties litigated the Monmouth Action for four years, Citibank never moved to compel arbitration. (*Id.* at 5–6.) Plaintiff also notes that Citibank did not move to compel arbitration in this matter until after it removed the case to this Court. (*Id.* at 6.)

"An arbitration agreement may be waived." *Rossi Fine Jewelers, Inc. v. Gunderson*, 2002 S.D. 82, ¶ 9 (quoting *Tjeerdsma v. Glob. Steel Buildings, Inc.*, 466 N.W.2d 643, 645 (S.D.1991)). "Since there is a dominant policy favoring arbitration, however, waiver cannot be lightly inferred." *Id.* Rather, the party seeking waiver must show: "(1) conduct or activity inconsistent with the right to arbitration and (2) prejudice to the party claiming waiver." *Id.* The question of waiver turns on the "significance of the action taken in a judicial forum." *Id.* "Delay and the extent of the moving party's trial-oriented activity are material factors in assessing a claim of prejudice." *Tjeerdsma*, 466 N.W.2d at 645.

Plaintiff has not shown that Citibank waived its right to arbitrate this dispute. To start, it is not clear how Citibank's failure to invoke arbitration in the Monmouth Action, an unrelated lawsuit that Citibank filed, is inconsistent with Citibank's right to compel arbitration in *this* lawsuit, which Plaintiff filed. Plaintiff, like Citibank, has the right to compel arbitration. (*See* Card Agreement at 9 ("You or we may arbitrate any claim . . . .").) When Citibank filed the Monmouth Action, Plaintiff could have compelled arbitration, but he chose not to. *Plaintiff's* failure to compel arbitration in that action does not mean that *Citibank* waived its arbitration right in this one. In any event, Plaintiff does not suggest that Citibank's failure to compel arbitration in the unrelated Monmouth Action caused him any prejudice.

Nor did Citibank waive its right to arbitrate because it moved to compel arbitration only after removing to this Court. Plaintiff sued Citibank in June 2025 (*see* Compl.); Citibank removed in August 2025 (*see* Notice of Removal); Citibank moved to compel arbitration in October 2025. (*See* Mot. to Compel). A delay "of three to four months would be significant only if accompanied by extensive trial-oriented activity by defendants." *Rossi Fine Jewelers*, 2002 S.D. at ¶ 10. Citibank, however, did not engage in any "trial-oriented activity" before filing its motion to compel

8

arbitration. Plaintiff, moreover, has not suggested that Citibank's pre-motion conduct in this action caused prejudice. Accordingly, Plaintiff has not shown that Citibank waived its right to compel arbitration.

**B.      Plaintiff's Claims Fall Within the Arbitration Provision**

The Arbitration Provision expressly covers

> any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship . . . . no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law.

(Card Member Agreement at 9.) Plainly, then, the Arbitration Provision applies statutory claims arising out of Plaintiff's account with Citibank, including claims brought under the FCRA, FDCPA, and NJCFA.

Plaintiff argues that claims brought under the FCRA, FDCPA, and NJCFA for "post-contractual conduct" cannot be arbitrated. He is mistaken. The Third Circuit and Supreme Court have repeatedly held parties may arbitrate statutory claims.[5] *See Gay*, 511 F.3d at 378 ("The circumstance that [the plaintiff's] claims are statutory does not mean that the Agreement could not specify that the parties to it would submit their controversies, if any, arising from it to arbitration for resolution."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[The Court's] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a

---

[5] Plaintiff claims that the Third Circuit recognizes that "arbitration clauses in credit card agreements do not extend to independent federal statutory violations." (Pl.'s Opp'n at 4.) He cites *In re Nat'l Mortgage Equity Corp. Mortg. Lending Litig.*, 639 F.3d 557 (3d Cir. 2011). (*Id.*) However, the Court is unable to find any case with that name or citation.

claim founded on statutory rights."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("[W]e construed an arbitration clause to encompass the disputes at issue without pausing at the source in a state statute of the rights asserted by the parties resisting arbitration."). This includes FCRA, FDCPA, and NJCFA claims. *See Jacobowitz v. Experian Info. Sols., Inc.*, No. 19-20120, 2021 WL 651160, at *3 (D.N.J. Feb. 19, 2021) (compelling arbitration of FCRA claim); *Vasquez v. Nat'l Enter. Sys., Inc.*, No. 19-16418, 2021 WL 1399862, at *3 (D.N.J. Apr. 14, 2021) (compelling arbitration of FDCPA claim); *Delta Funding Corp. v. Harris*, 396 F. Supp. 2d 512, 517 (D.N.J. 2004) ("New Jersey courts that have addressed this specific issue have concluded that statutory claims arising from the CFA are amenable to arbitration.").

To find a claim falls within an arbitration clause, the Court focuses on the "factual allegations in the complaint rather than the legal causes of action asserted." *RCM Techs., Inc. v. Brignik Tech., Inc.*, 137 F. Supp. 2d 550, 553 (D.N.J. 2001) (quoting *Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J. 1992)). "If the allegations of the complaint involve matters covered by the parties' underlying agreement, the claims must be arbitrated, regardless of the legal labels ascribed to the claims." *Id.* (quoting *Zimmerman*, 783 F. Supp. at 868).

Here, the Arbitration Provision covers "any claim, dispute or controversy between [Plaintiff] and [Citibank] arising out of or related to [Plaintiff's] Account, a previous related Account or our relationship." (Card Agreement at 9.) Plaintiff alleges that Citibank misleadingly reported the balance on Plaintiff's *account*; illegally re-aged the debt on his *account*; and submitted false, misleading, and inaccurate information about Plaintiff's *account* to credit bureaus. (*See* Compl.) Simply put, the facts in the Complaint relate to Plaintiff's account. Regardless of how Plaintiff labels his claims, they must be arbitrated.

10

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to compel arbitration (ECF No. 7) is

**GRANTED**. Pursuant to 9 U.S.C. § 3, this matter is **STAYED** pending the results of arbitration.

An appropriate Order accompanies this Opinion.

**DATED: 4/28/2026**

_____
JULIEN XAVIER NEALS
United States District Judge

11